## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MOSKOWITZ FAMILY LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC.,<br>MEDTRONIC SOFAMOR DANEK,<br>INC., MEDTRONIC SOFAMOR<br>DANEK USA, INC., WARSAW<br>ORTHOPEDIC, INC., and TITAN<br>SPINE, INC.,<br><br>　　　　Defendants. | CASE NO.: _____<br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Moskowitz Family LLC files this Complaint and demand for a jury trial seeking relief for patent infringement by Defendants Medtronic, Inc., Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc., Warsaw Orthopedic, Inc., and Titan Spine, Inc. (collectively, "Medtronic" or the "Medtronic Defendants"). Plaintiff states and alleges the following:

## THE PARTIES

1.　　This case is brought by Dr. Nathan Moskowitz, who pioneered and patented groundbreaking advances in the field of spinal surgery. Those patented advances were shared with Medtronic, the world's largest medical device company, which, despite knowing of Dr. Moskowitz's patents, used and continues to use his patented technologies without permission, and without providing Dr. Moskowitz with any credit or compensation.

2.      Moskowitz Family LLC was formed by Dr. Nathan C. Moskowitz. Dr. Moskowitz is the lead inventor of the patents assigned to Moskowitz Family LLC.

3.      Dr. Moskowitz is a leading neurosurgeon and an innovator in the field of spinal surgery.  He trained in General Surgery and Neurological Surgery at Johns Hopkins Hospital, where he became Chief Resident, and held several fellowship positions at Johns Hopkins University.  He is a Fellow of the Academy of the College of Surgeons, the International College of Surgeons, and the American Academy of Neurological Surgeons.

4.      Both a researcher and a medical doctor, Dr. Moskowitz received his Ph.D. in Neurochemistry in 1983 and his medical degree in 1984 from the Mount Sinai School of Medicine.  He has served as the Chief of the Department of Neurosurgery for Shady Grove Adventist Hospital, Chief of the Department of Neurosurgery for Montgomery General Hospital, and Assistant Professor for the Department of Neurosurgery at Johns Hopkins University since 1992.  After a decade of practicing clinical neurosurgery, and consulting on and treating many patients, he became acutely aware of the complications that can arise during and after surgical procedures.  Dr. Moskowitz realized that the status quo of spinal surgery technology and methodology did not lead to the superlative quality of life that his patients deserved.  With the belief that the field could be, and needed to be, advanced, Dr. Moskowitz focused his career on researching and developing devices, tools, and methods utilizing more minimally invasive and improved solutions for spinal surgery to enhance the quality of life for his and other patients with debilitating spine disease.

5.    Dr. Moskowitz has published more than thirty research articles and abstracts in leading scientific and medical publications, such as Science, the Journal of Neurochemistry, Brain Research, the Journal of Neurosurgery, Biochemical and Biophysical Research Communications, and Medical Hypotheses.

6.    Dr. Moskowitz has been recognized with numerous awards for excellence in patient care and contributions to the medical field.  Among these honors, Dr. Moskowitz has been named one of "America's Best Physicians" for six consecutive years and has been a recipient of the "Castle Connolly Top Doctor Award" every year since 2008.  Additionally, Dr. Moskowitz has been awarded the "America's Most Honored Doctor Award" twice.  Dr. Moskowitz has also been recognized as one of the best doctors in various publications, including *Washingtonian*, *Bethesda Magazine*, *Modern Luxury*, and *Consumers' Checkbook*.  Reflecting on his contributions to the spine medical field, Dr. Moskowitz has been recognized as a Top Inventor in Spine by Spinemarket's Annual Patent Power Index and ranked as the number five inventor out of the top twenty.

7.    Moskowitz Family LLC is a limited liability company organized and existing under the laws of the state of Maryland, with its principal place of business located at 212 North Adams Street, Suite 200, Rockville, MD 20850.  The company was created to develop human spine related devices and protect and license any resulting inventions and intellectual property.

8.    Moskowitz Family LLC owns a portfolio of nearly one hundred United States patents and nine pending patent applications related to new and improved fixation

systems for minimally invasive spinal surgery.  The technologies described and claimed in those patents have revolutionized spinal fusion procedures.

9.    Before Moskowitz Family LLC's inventions, spinal fusion patients were far more likely to suffer a host of negative outcomes such as neural or vascular injury, esophageal injuries, excessive blood loss, prolonged length of surgical time, prolonged recovery, and incomplete return to work.  These complications resulted largely from static and non-expandable implants, misplaced screws during the spinal fusion, and plate and/or screw pullout after the operations.

10.    Moskowitz Family LLC's patents solve these issues by providing more minimally invasive spinal implants combined with improved surgical methods, tools, and systems of implantation for spinal fusion surgery.  For example, some of these inventions include minimal impaction, steerable and controlled expandable (custom-fit) intervertebral implants that minimize the challenges of insertion and optimize the fit and placement of the implant between the vertebrae.  Importantly, they also minimize disruption to the muscles and nerve roots.  Another invention includes easily inserted, zero-profile, integrated stand-alone cervical and lumbar spacers, which provide the strength of traditional anterior cervical and lumbar fusions while avoiding high-profile plates and maximizing safe and multi-level placement.  Other inventions include implants that can be inserted in a single step and continuously expanded to desired heights with automatic locking mechanisms to provide a customized fit.  Moskowitz Family LLC's patent portfolio has been recognized in the "Top 20 of Patent Portfolios" in

Spinemarket's Annual Patent Power Index and ranked Top 10 in the Interbody category of the Index.

11.    On information and belief, Defendant Medtronic, Inc. is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, MN 55432.  Medtronic, Inc. is the world's largest medical device company and a dominant force in the spinal surgery market.  On information and belief, Medtronic, Inc. oversees and directs its extensive spinal business operations through a network of subsidiaries, including Medtronic Sofamor Danek USA, Inc., Medtronic Sofamor Danek, Inc., Warsaw Orthopedic, Inc., and Titan Spine, Inc.  These subsidiaries function collectively to research, develop, manufacture, market, offer for sale, and sell spinal surgery products, including the Accused Instrumentalities: Elevate™ Spinal System ("Elevate"), Divergence™ Anterior Cervical Fusion System ("Divergence"), Sovereign™ Spinal System ("Sovereign"), Catalyft™ PL Expandable Interbody System ("Catalyft PL"), Catalyft™ PL40 Expandable Interbody System ("Catalyft PL40") (Catalyft PL and Catalyft PL40 collectively, "Catalyft"), Endoskeleton™ TAS Interbody System ("Endoskeleton TAS"), Endoskeleton™ TCS Interbody System ("Endoskeleton TCS"), and T2 Stratosphere™ Expandable Corpectomy System used in the thoracolumbar and/or cervical spine ("T2 Stratosphere").  On information and belief, Medtronic, Inc. directly benefits from and exercises control over the infringing activities of its subsidiaries, making it liable for their conduct.

12.    On information and belief, Defendant Medtronic Sofamor Danek USA, Inc. ("MSDU") is a Tennessee corporation with a regular and established place of business at

710 Medtronic Parkway, Minneapolis, MN 55432. On information and belief, MSDU is responsible for the development, manufacturing, marketing, and sales of Medtronic's spinal surgery products in the United States. On information and belief, MSDU plays a key role in commercializing the Accused Instrumentalities, ensuring their widespread availability to hospitals, surgeons, and medical providers. On information and belief, MSDU actively promotes the Accused Instrumentalities to healthcare professionals across the country. On information and belief, MSDU collaborates closely with the other Medtronic Defendants in the spinal business unit, making it a central player in Medtronic's infringing conduct.

13.     On information and belief, Defendant Medtronic Sofamor Danek, Inc. ("MSD") is an Indiana corporation with a regular and established place of business at 710 Medtronic Parkway, Minneapolis, MN 55432. On information and belief, MSD serves as Medtronic's engineering, research and development, and regulatory arm for spinal implant systems. On information and belief, MSD is heavily involved in designing, testing, and refining the Accused Instrumentalities and ensuring their compliance with regulatory standards. On information and belief, MSD worked in concert with the other Medtronic Defendants to develop the Accused Instrumentalities and supports the continued sale and distribution of the Accused Instrumentalities.

14.     On information and belief, Defendant Warsaw Orthopedic, Inc. is an Indiana corporation with a regular and established place of business at 710 Medtronic Parkway, Minneapolis, MN 55432. On information and belief, Warsaw Orthopedic plays a key role in the manufacturing and distribution of the Accused Instrumentalities. On

information and belief, Warsaw Orthopedic is the successor by merger to Medtronic

Sofamor Danek Holdings, Inc., further consolidating Medtronic's control over its spinal

division.  On information and belief, Warsaw Orthopedic is a crucial entity in

Medtronic's infringing activities, leveraging its manufacturing capabilities to bring the

Accused Instrumentalities to market.

15.    On information and belief, Defendant Titan Spine, Inc. is a Delaware

corporation with a regular and established place of business at 710 Medtronic Parkway,

Minneapolis, MN 55432.  On information and belief, Titan Spine specializes in titanium

interbody fusion implants, which are incorporated into multiple Medtronic spinal

systems, including the Endoskeleton TAS and Endoskeleton TCS devices.  These devices

are among the Accused Instrumentalities that infringe Moskowitz's patents.  Titan Spine,

on information and belief, collaborates with the other Medtronic Defendants to develop

and market its spinal implant solutions.

16.    On information and belief, Medtronic acquired Titan Spine, Inc. in or

around 2019 as part of a strategic expansion of its spinal implant portfolio.  Through this

acquisition, Medtronic incorporated Titan Spine's product line into Medtronic's broader

spinal division.  On information and belief, Medtronic's acquisition allowed it to

integrate Titan Spine's surface technology into its spinal implants, including the Accused

Instrumentalities, further strengthening Medtronic's dominance in the market.  On

information and belief, Medtronic's continued commercialization of the Endoskeleton

devices and other Titan Spine technology post-acquisition infringes Moskowitz's patent

rights.

17.     On information and belief, Medtronic's acquisition and consolidation strategy has been instrumental in expanding its spinal implant offerings and reinforcing its control over the U.S. and global spinal surgery markets.  On information and belief, by acquiring Titan Spine and integrating its operations with MSDU, MSD, and Warsaw Orthopedic, Medtronic has created a highly coordinated spinal implant division.  On information and belief, this division systematically develops, manufactures, markets, and distributes the Accused Instrumentalities, ensuring their broad commercial availability while knowingly infringing Moskowitz's patents.

18.     On information and belief, the Medtronic Defendants have entered into this joint enterprise for the purpose of exploiting and profiting from the Accused Instrumentalities, as detailed herein.  On information and belief, the Medtronic Defendants have together entered into express and/or implied agreements to exploit and profit from the Accused Instrumentalities.

19.     On information and belief, the Medtronic Defendants, via their joint enterprise, generate revenues, business goodwill, and market share, which bolsters their respective reputations and ability to generate sales of the Accused Instrumentalities.  On information and belief, the actions of the Medtronic Defendants were carried out in furtherance of the common purpose of exploiting and profiting from the Accused Instrumentalities.

20.     On information and belief, the actions of the Medtronic Defendants complained of herein benefit the Medtronic Defendants and, as such, exhibit a common pecuniary interest (including but not limited to revenues, goodwill, market share, and

sales advantage) between the Medtronic Defendants.  On information and belief, each of the Medtronic Defendants are sophisticated parties and entered into agreements with each other and mutually exercise control over the joint enterprise.

21.    On information and belief, the joint enterprise exists and operates in this judicial District.

## THE ASSERTED PATENTS

22.    This is a civil action for infringement of U.S. Patent No. 9,005,293 ("the '293 patent"), U.S. Patent No. 9,907,674 ("the '674 patent"), U.S. Patent No. 10,016,284 ("the '284 patent"), U.S. Patent No. 10,064,738 ("the '738 patent"), U.S. Patent No. 10,238,505 ("the '505 patent"), U.S. Patent No. 10,426,633 ("the '633 patent"), U.S. Patent No. 10,603,183 ("the '183 patent"), U.S. Patent No. 11,096,797 ("the '797 patent"), U.S. Patent No. 11,376,136 ("the '136 patent"), U.S. Patent No. 11,864,755 ("the '755 patent"), and  U.S. Patent No. 12,011,367 ("the '367 patent") (collectively, the "Asserted Patents").

23.    The '293 patent is entitled "Bi-directional fixating transvertebral body screws and posterior cervical and lumbar interarticulating joint calibrated stapling devices for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on April 14, 2015.  The '293 patent stems from Application No. 13/108,982, filed on May 16, 2011.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '293 patent, including the right to sue for and collect past damages.  A true and correct copy of the '293 patent is attached to this Complaint as Exhibit A1.

24.    The '674 patent is entitled "Bi-directional fixating transvertebral body screws and posterior cervical and lumbar interarticulating joint calibrated stapling devices for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on March 6, 2018.  The '674 patent stems from Application No. 13/210,168, filed on August 15, 2011.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '674 patent, including the right to sue for and collect past damages.  A true and correct copy of the '674 patent is attached to this Complaint as Exhibit B1.

25.    The '284 patent is entitled "Zero-profile expandable intervertebral spacer devices for distraction and spinal fusion and a universal tool for their placement and expansion" and was duly and legally issued by the United States Patent and Trademark Office on July 10, 2018.  The '284 patent stems from Application No. 15/820,232, filed on November 21, 2017.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '284 patent, including the right to sue for and collect past damages.  A true and correct copy of the '284 patent is attached to this Complaint as Exhibit C1.

26.    The '738 patent is entitled "Bi-directional fixating/locking transvertebral body screw/intervertebral cage stand-alone constructs having a central screw locking lever, and pliers and devices for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on September 4, 2018.  The '738 patent stems from Application No. 15/490,107, filed on April 18, 2017.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '738 patent, including the right to sue for

and collect past damages.  A true and correct copy of the '738 patent is attached to this Complaint as Exhibit D1.

27.    The '505 patent is entitled "Bi-directional fixating/locking transvertebral body screw/intervertebral cage stand-alone constructs" and was duly and legally issued by the United States Patent and Trademark Office on March 26, 2019.  The '505 patent stems from Application No.  15/678,401, filed on August 16, 2017.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '505 patent, including the right to sue for and collect past damages.  A true and correct copy of the '505 patent is attached to this Complaint as Exhibit E1.

28.    The '633 patent is entitled "Zero-profile expandable intervertebral spacer devices for distraction and spinal fusion and a universal tool for their placement and expansion" and was duly and legally issued by the United States Patent and Trademark Office on October 1, 2019.  The '633 patent stems from Application No. 16/025,667, filed on July 2, 2018.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '633 patent, including the right to sue for and collect past damages.  A true and correct copy of the '633 patent is attached to this Complaint as Exhibit F1.

29.    The '183 patent is entitled "Bi-directional fixating/locking transvertebral body screw/intervertebral cage stand-alone constructs having a central screw locking lever, and pliers and devices for spinal fusion" and was duly and legally issued by the United States Patent and Trademark Office on March 31, 2020.  The '183 patent stems from Application No. 16/100,410, filed on August 10, 2018.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '183 patent, including the right to sue

for and collect past damages.  A true and correct copy of the '183 patent is attached to this Complaint as Exhibit G1.

30.    The '797 patent is entitled "Zero-profile expandable intervertebral spacer devices for distraction and spinal fusion and a universal tool for their placement and expansion" and was duly and legally issued by the United States Patent and Trademark Office on August 24, 2021.  The '797 patent stems from Application No. 16/587,993, filed on September 30, 2019.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '797 patent, including the right to sue for and collect past damages. A true and correct copy of the '797 patent is attached to this Complaint as Exhibit H1.

31.    The '136 patent is entitled "Expandable spinal implant and tool system" and was duly and legally issued by the United States Patent and Trademark Office on July 5, 2022.  The '136 patent stems from Application No. 16/744,755, filed on January 16, 2020.  Moskowitz Family LLC owns the entire right, title, and interest in and to the '136 patent, including the right to sue for and collect past damages.  A true and correct copy of the '136 patent is attached to this Complaint as Exhibit I1.

32.    The '755 patent is entitled "Artificial expandable implant systems" and was duly and legally issued by the United States Patent and Trademark Office on January 9, 2024.  The '755 patent stems from Application No. 17/208,640, filed on March 22, 2021. Moskowitz Family LLC owns the entire right, title, and interest in and to the '755 patent, including the right to sue for and collect past damages.  A true and correct copy of the '755 patent is attached to this Complaint as Exhibit J1.

33.     The '367 patent is entitled "Expandable intervertebral device" and was duly and legally issued by the United States Patent and Trademark Office on June 18, 2024. The '367 patent stems from Application No. 17/408,068, filed on August 20, 2021. Moskowitz Family LLC owns the entire right, title, and interest in and to the '367 patent, including the right to sue for and collect past damages.  A true and correct copy of the '367 patent is attached to this Complaint as Exhibit K1.

34.     To the extent applicable, Moskowitz Family LLC has complied with 35 U.S.C. § 287 for each of the Asserted Patents.

## JURISDICTION AND VENUE

35.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq*.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

36.     This Court has personal jurisdiction over Defendant Medtronic, Inc. because it is incorporated and maintains its principal place of business in Minnesota, rendering it "at home" in the State for personal jurisdictional purposes.

37.     This Court has personal jurisdiction over the Medtronic Defendants consistent with the Due Process Clause of the United States Constitution and the Minnesota Long-Arm Statute (Minn. Stat. § 543.19) because the claims asserted herein arise from and relate to Defendants' extensive and continuous business activities in this State and this judicial District.  On information and belief, the Medtronic Defendants have substantial, continuous, and systematic contacts with Minnesota, establishing both general and specific jurisdiction.  Medtronic, Inc. is headquartered in this State and, along

with its subsidiaries, has long conducted continuous and systematic business operations in Minnesota, including the research, design, development, manufacturing, marketing, sale, and distribution of spinal implant products, including the Accused Instrumentalities. On information and belief, each Medtronic Defendant has a physical presence in Minnesota and considers the State a key operational hub. Furthermore, the Medtronic Defendants have purposefully directed their activities toward Minnesota and committed acts of patent infringement within this judicial District and throughout the State. On information and belief, the Medtronic Defendants—collectively and individually, including through their agents, subsidiaries, intermediaries, and/or affiliates—have made, used, sold, offered for sale, and/or imported the Accused Instrumentalities that infringe one or more claims of the Asserted Patents in this judicial District. On information and belief, the Medtronic Defendants—collectively and individually—also own, lease, and/or operate physical offices and/or facilities in Minnesota; employ a substantial workforce, including contractors, sales representatives, and engineers, within the State; enter into contracts with Minnesota-based entities; solicit business from Minnesota residents; and market, sell, ship, and distribute their infringing products throughout the State and this judicial District. The activities described in this paragraph, including those constituting patent infringement, are detailed further in the following sections of this Complaint.

38.    Venue is proper in this judicial district as to the Medtronic Defendants pursuant to at least 28 U.S.C. § 1400(b). As noted above, the Medtronic Defendants maintain regular and established places of business in this judicial District, at which they have committed acts of infringement and placed the Accused Instrumentalities into the

stream of commerce throughout the State of Minnesota.  Further, Defendant Medtronic, Inc. is incorporated in the State of Minnesota and, therefore, resides in this State under §1400(b).

## PRE-SUIT DISCUSSIONS

39.    Dr. Moskowitz has engaged in extensive discussions with the Medtronic Defendants regarding his patented and patent-pending spinal inventions.  These interactions spanned from 2005 to at least 2016, and involved multiple meetings, technology presentations, email exchanges, and direct correspondence with Medtronic executives, engineers, and legal counsel.  Throughout this time, Dr. Moskowitz disclosed his innovative spinal technologies, including expandable and non-expandable interbody fusion devices, endoscopic surgical tools, facet fusion devices, and artificial discs. Despite Medtronic's repeated expressions of interest, they ultimately chose not to license or otherwise acquire rights to his technology.  Instead, the Medtronic Defendants systematically absorbed Dr. Moskowitz's proprietary technologies, by developing and commercializing competing products incorporating his innovations—all without any compensation to him.

40.    Dr. Moskowitz's first interaction with Medtronic dates back to 2005, when he reached out to Frank Bono, then Vice President of Product Development, to discuss his spinal fusion innovations, including his bi-directional screw and standalone intervertebral fusion devices.  Mr. Bono responded with interest but conditioned further discussions on the patents being publicly disclosed.  By 2010, Dr. Moskowitz's

inventions had progressed significantly, with issued and pending patents in the spinal space, and Medtronic took active steps to engage with him.

41.    In a series of 2010 and 2011 communications, Medtronic's Director of Advanced Technologies, Newton Metcalf, expressed interest in reviewing Dr. Moskowitz's intellectual property.  In early 2011, the parties held multiple meetings regarding Dr. Moskowitz's posterior fixation and interbody fusion technologies. Medtronic sought to evaluate these devices, requested PowerPoint presentations, and reviewed Dr. Moskowitz's patent claims—all clear indications that Medtronic was aware of the scope of his patents.  Notably, a March 2011 email from Mr. Metcalf explicitly states Medtronic's interest in reviewing Dr. Moskowitz's "published IP," confirming that they had knowledge of at least some of his patent rights as early as that time.

42.    By 2013, the Medtronic Defendants' awareness of Dr. Moskowitz's patent portfolio had expanded.  In a March 2013 meeting, Dr. Moskowitz demonstrated his endoscopic surgical prototype to Mr. Metcalf, who was "very impressed" with its clarity and functionality.  Medtronic requested additional patent details but refused to make any financial commitments.  During this same meeting, Mr. Metcalf acknowledged that Medtronic was actively developing expandable interbody fusion devices—contradicting his prior statements that he had never seen similar technology.  This shifting narrative, coupled with Medtronic's growing internal developments, strongly suggests that Medtronic was taking Dr. Moskowitz's concepts and integrating them into their own product pipeline.

43.     By 2015, after years of meetings, product demonstrations, and disclosures, Dr. Moskowitz had his attorney formally put the Medtronic Defendants on notice regarding his patent rights.  In two separate letters sent via Federal Express—one addressed to Brad Lerman, Medtronic's Senior Vice President and General Counsel, and another to Newton Metcalf, the Director of Advanced Technologies—Dr. Moskowitz's legal counsel informed Medtronic of his patent portfolio.  The letter identified the more than thirty issued patents and pending applications contained in Dr. Moskowitz's patent portfolio at the time.  The letters specifically identified the asserted '293 patent, as well as U.S. Patent App. Pub. No. 2013/0018469, which issued as the asserted '674 patent. The other asserted patents are all continuations of the pending applications identified in the letters, meaning they share the same technical description and figures as the applications Dr. Moskowitz shared with Medtronic.  The letters stated that the identified patents "may be of interest to Medtronic," sought confirmation that they were the appropriate people for this type of correspondence, and informed Mr. Lerman and Mr. Metcalf that Dr. Moskowitz looked forward to Medtronic's response.

44.     After Dr. Moskowitz notified Medtronic of his patent portfolio, Medtronic's counsel, Jason Piche, acknowledged receipt of the letter and confirmed Medtronic's awareness of the portfolio.  In August 2015, Mr. Piche left a voicemail for Dr. Moskowitz's attorney, explicitly stating that he was calling "regarding the Moskowitz patent portfolio."  He further indicated that Medtronic had been "working [their] way through the … list of patents in that portfolio" and was actively trying to coordinate

discussions with their R&D leadership to review the portfolio, particularly certain "targeted references" that Medtronic believed were of particular relevance.

45.    In subsequent communications, Medtronic confirmed that they were still actively evaluating the Moskowitz patent portfolio and consulting with key business and R&D personnel.  As part of this review, Medtronic expressed interest in potential acquisition or licensing opportunities, signaling their recognition of the portfolio's relevance and value.

46.    However, in January 2016, Mr. Piche sent an email to "close the loop" on Medtronic's inquiry into the Moskowitz patent portfolio and the parties' conversations from fall 2015.  In the email, he briefly stated that "Medtronic does not wish to pursue acquisition or license of the noted portfolio at this time."  The email provided no explanation of Medtronic's evaluation process or findings, offering only a conclusory statement with no further detail or opportunity for discussion.

47.    Before Medtronic acquired Titan Spine, Dr. Moskowitz took steps to put Titan Spine on notice of his patent rights.  In July 2015, Dr. Moskowitz's attorney sent a letter via Federal Express to Titan Spine's Chief Executive Officer, Dr. Peter Ullrich. The letter enclosed a list of Dr. Moskowitz's issued patents and pending applications, as well as a copy of the asserted '293 patent.  It expressly stated that the identified patents "may be of interest to Titan Spine" and requested confirmation that Dr. Ullrich was the appropriate point of contact for such correspondence.  The letter also invited Titan Spine to engage in discussions regarding Dr. Moskowitz's patent portfolio.  Unlike Medtronic,

Titan Spine did not even acknowledge the letter, nor did it provide any response or engage in any dialogue with Dr. Moskowitz.

48.     To this day, the Medtronic Defendants have never engaged in meaningful licensing discussions with Dr. Moskowitz or Moskowitz Family LLC.  Instead, they have proceeded to launch spinal fusion products that embodied the same technologies that Dr. Moskowitz had disclosed years earlier—technologies the Medtronic Defendants had repeatedly expressed interest in but refused to license.

49.     The Medtronic Defendants do not have a license to any of the Asserted Patents, either express or implied.

50.     On information and belief, the Medtronic Defendants have not taken any affirmative steps to avoid infringing any of the Asserted Patents after learning of them.

## <u>COUNT I</u>
### (Infringement of the '293 Patent)

51.     Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

52.     On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '293 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '293 Accused Instrumentalities. Medtronic's '293 Accused Instrumentalities include, but are not limited to, the Divergence, Sovereign, Endoskeleton TAS, and Endoskeleton TCS systems and

instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

53.    Attached to this Complaint as Exhibits A2-A5 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 43 of the '293 patent are met by the '293 Accused Instrumentalities.

54.    The Medtronic Defendants' infringement of the '293 patent has also been indirect.

55.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '293 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '293 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '293 patent.

56.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '293 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claim 43 of the '293 patent, or with willful blindness to that fact.  On information and belief, the Medtronic

Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '293 Accused Instrumentalities in ways that directly infringe the '293 patent, and Medtronic has and will continue to encourage these acts with the specific intent to infringe the '293 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '293 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '293 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the use of Medtronic's '293 Accused Instrumentalities constitutes direct infringement of the '293 patent but took deliberate actions to avoid learning of these facts.

57.     On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '293 patent since at least shortly after the issuance of the '293 patent in April 2015, or were willfully blind to the existence of the patent.

58.     For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

59.     The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to the Medtronic Defendants explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the '293 patent.

60.     On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '293 patent.  For example, the '293 patent has been cited during prosecution of at least 21 of the Medtronic Defendants' patent applications—starting as early as March 2018.

61.     On information and belief, the Medtronic Defendants have known that the making and/or using of their '293 Accused Instrumentalities constitutes an act of direct infringement of the '293 patent since at least shortly after the issuance of the '293 patent in April 2015.  The Medtronic Defendants have also had this knowledge since at least June 2015, when they received Dr. Moskowitz's letters, which expressly identified the '293 patent.  The Medtronic Defendants were further aware of their infringement as of at least March 2018, when they first cited the '293 patent during prosecution of their own

patents, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts. To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts. The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '293 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '293 patent.

62.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '293 patent has been and continues to be willful and merits enhanced damages.

63.    For example, the Medtronic Defendants have known of the '293 patent and their infringement of the '293 patent as described herein.

64.    On information and belief, since knowing of the '293 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '293 patent.

65.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '293 patent.

66.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '293 patent are either invalid or not infringed by the '293 Accused Instrumentalities and/or their activities concerning the '293 Accused Instrumentalities.

67.     Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

68.     On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '293 patent unless and until it is enjoined by this Court.

69.     On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '293 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '293 patent.

## COUNT II
### (Infringement of the '674 Patent)

70.     Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

71.     On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '674 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '674 Accused Instrumentalities. Medtronic's '674 Accused Instrumentalities include, but are not limited to, the Divergence systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

72.    Attached to this Complaint as Exhibit B2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 34 of the '674 patent are met by the '674 Accused Instrumentalities.

73.    The Medtronic Defendants' infringement of the '674 patent has also been indirect.

74.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '674 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '674 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '674 patent.

75.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to use the '674 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claim 34 of the '674 patent, or with willful blindness to that fact.  On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '674 Accused Instrumentalities in ways that directly infringe the '674

patent, and Medtronic has and will continue to encourage these acts with the specific intent to infringe the '674 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '674 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '674 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '674 Accused Instrumentalities constitutes direct infringement of the '674 patent but took deliberate actions to avoid learning of these facts.

76.    On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '674 patent since at least shortly after the issuance of the '674 patent in March 2018, or were willfully blind to the existence of the patent.

77.    For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

78.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement

with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to the Medtronic Defendants explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio, including the patent application that later issued as the asserted '674 patent.

79.    On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '674 patent.  For example, family members of the '674 patent have been cited during prosecution of at least 20 of the Medtronic Defendants' patent applications—starting as early as May 2018.

80.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '674 Accused Instrumentalities constitutes an act of direct infringement of the '674 patent since at least shortly after the issuance of the '674 patent in March 2018.  Medtronic was further aware of their infringement as of at least May 2018, when they first cited family members of the '674 patent during prosecution of their own patent applications, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of

knowledge resulted from their deliberate decision to avoid learning these facts. The

Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making

and/or using of the '674 Accused Instrumentalities by hospitals, surgeons, medical

professionals, distributors, manufacturers, and independent sales representatives directly

infringes the '674 patent.

81.    On information and belief, the Medtronic Defendants have indirectly

infringed and continue to indirectly infringe the '674 patent under 35 U.S.C. § 271(c)

because they have contributed to direct infringement, and continues to contribute to direct

infringement, by third parties (including hospitals, surgeons, medical professionals,

distributors, manufacturers, and independent sales representatives) of at least claim 34 of

the '674 patent. For example, the Medtronic Defendants have sold, offered for sale,

and/or imported into the United States and are currently selling, offering for sale, and/or

importing into the United States components of the '674 Accused Instrumentalities (such

as intervertebral cages and/or inserter tools) to these third parties with full knowledge of

the '674 patent. These third parties have assembled the components to make and use the

'674 Accused Instrumentalities according to instructions, manuals, brochures,

documentation, tutorials, videos, mobile applications, website materials, promotional

materials, and the like that instructed/instruct them how to assemble and use the

components of the '674 Accused Instrumentalities in ways that infringed/infringe the

'674 patent. The Medtronic Defendants' components were and are not staple articles or

commodities of commerce suitable for substantial noninfringing uses. Further, the

Medtronic Defendants' components constituted/constitute a material part of the

inventions claimed in the '674 patent. The Medtronic Defendants supplied/supply these components with knowledge of the '674 patent and knowledge that the components were/are especially made for use in an infringing manner.

82.    On information and belief, the Medtronic Defendants have also indirectly infringed and continue to indirectly infringe the '674 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '674 Accused Instrumentalities (such as intervertebral cages and/or inserter tools) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 34 of the '674 patent if such combination occurred within the United States. For example, the Medtronic Defendants have supplied, and continue to supply, such third parties outside of the United States with one or more components of the '674 Accused Instrumentalities with full knowledge of the '674 patent. These third parties have made or used the '674 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '674 Accused Instrumentalities and use them in ways that would infringe the '674 patent if such combination occurred within the United States. The Medtronic Defendants provide these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '674 patent if such assembly and usage took place in the United States. Additionally, the Medtronic Defendants'

components are especially made and/or especially adapted for use in an infringing manner and the Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

83.     On information and belief, the Medtronic Defendants' actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '674 patent.  At a minimum, the Medtronic Defendants' conduct demonstrates that Medtronic either knew or should have known that the acts of such third parties directly infringed/infringe the '674 patent (or would infringe if those acts occurred within the United States).

84.     Moreover, on information and belief, the Medtronic Defendants' infringement of the '674 patent has been and continues to be willful and merits enhanced damages.

85.     For example, the Medtronic Defendants have known of the '674 patent and their infringement of the '674 patent as described herein.

86.     On information and belief, since knowing of the '674 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '674 patent.

87.     On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '674 patent.

88.     On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '674 patent are either invalid or not infringed by the '674 Accused Instrumentalities and/or their activities concerning the '674 Accused Instrumentalities.

89.     Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

90.     On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '674 patent unless and until they are enjoined by this Court.

91.     On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '674 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '674 patent.

## COUNT III
### (Infringement of the '284 Patent)

92.     Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

93.     On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '284 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using,

selling, offering for sale, and/or importing the '284 Accused Instrumentalities. Medtronic's '284 Accused Instrumentalities include, but are not limited to, the Elevate and Catalyft systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

94.    Attached to this Complaint as Exhibits C2 and C3 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 1 of the '284 patent are met by the '284 Accused Instrumentalities.

95.    The Medtronic Defendants' infringement of the '284 patent has also been indirect.

96.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '284 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '284 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '284 patent.

97.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '284 Accused Instrumentalities, with knowledge that making and/or usage in

accordance with their instructions directly infringed/infringes at least claim 1 of the '284 patent, or with willful blindness to that fact.  On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '284 Accused Instrumentalities in ways that directly infringe the '284 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '284 patent.  Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '284 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '284 patent.  Alternatively, the Medtronic Defendants have acted with willful blindness to these facts.  On information and belief, the Medtronic Defendants know that there is a high probability that the use of Medtronic's '284 Accused Instrumentalities constitutes direct infringement of the '284 patent but took deliberate actions to avoid learning of these facts.

98.    On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '284 patent since at least shortly after the issuance of the '284 patent in July 2018, or were willfully blind to the existence of the patent.

99.    For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when

Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

100.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which Medtronic sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed Medtronic on notice of his patent rights through written correspondence from legal counsel.  The letters sent to the Medtronic Defendants explicitly identified more than thirty issued patents and pending applications within Moskowitz Family LLC's portfolio. The asserted '284 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

101.    On information and belief, the Medtronic Defendants patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '284 patent.  For example, the '284 patent has been cited during prosecution of at least 15 of the Medtronic Defendants' patent applications—starting as early as May 2021.

102.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '284 Accused Instrumentalities constitutes an act of direct infringement of the '284 patent since at least shortly after the issuance of the '284 patent

in July 2018. The Medtronic Defendants were further aware of their infringement as of at least May 2021, when they cited the '284 patent during prosecution of their own patent applications, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts. To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts. The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '284 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '284 patent.

103.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '284 patent has been and continues to be willful and merits enhanced damages.

104.    For example, the Medtronic Defendants have known of the '284 patent and their infringement of the '284 patent as described herein.

105.    On information and belief, since knowing of the '284 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '284 patent.

106.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '284 patent.

107.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '284 patent are either invalid or not infringed by

the '284 Accused Instrumentalities and/or their activities concerning the '284 Accused Instrumentalities.

108.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

109.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '284 patent unless and until they are enjoined by this Court.

110.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '284 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '284 patent.

## COUNT IV

### (Infringement of the '738 Patent)

111.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

112.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '738 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '738 Accused Instrumentalities. Medtronic's '738 Accused Instrumentalities include, but are not limited to, the Sovereign

systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

113. Attached to this Complaint as Exhibit D2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '738 patent are met by the '738 Accused Instrumentalities.

114. The Medtronic Defendants' infringement of the '738 patent has also been indirect.

115. On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '738 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '738 Accused Instrumentalities. Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '738 patent.

116. For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '738 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claim 1 of the '738 patent, or with willful blindness to that fact. On information and belief, the Medtronic

Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '738 Accused Instrumentalities in ways that directly infringe the '738 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '738 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '738 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '738 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '738 Accused Instrumentalities constitutes direct infringement of the '738 patent but took deliberate actions to avoid learning of these facts.

117. On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '738 patent since at least shortly after the issuance of the '738 patent in September 2018, or were willfully blind to the existence of the patent.

118. For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

COMPLAINT FOR PATENT INFRINGEMENT
PAGE 38

119.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to Medtronic explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio.  The asserted '738 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

120.    On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '738 patent.  For example, family members of the '738 patent have been cited during prosecution of at least 18 of the Medtronic Defendants' patent applications—starting as early as May 2021.

121.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '738 Accused Instrumentalities constitutes an act of direct infringement of the '738 patent since at least shortly after the issuance of the '738 patent in September 2018.  The Medtronic Defendants were further aware of their infringement as of at least May 2021, when they first cited family members of the '738 patent during

prosecution of their own patent applications, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts. To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts. The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '738 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '738 patent.

122.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe the '738 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continues to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 1 of the '738 patent. For example, the Medtronic Defendants have sold, offered for sale, and/or imported into the United States and are currently selling, offering for sale, and/or importing into the United States components of the '738 Accused Instrumentalities (such as intervertebral cages and/or screw locking brackets) to these third parties with full knowledge of the '738 patent. These third parties have assembled the components to make and use the '738 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '738 Accused Instrumentalities in ways that infringed/infringe the

'738 patent.  The Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, the Medtronic Defendants' components constituted/constitute a material part of the inventions claimed in the '738 patent.  The Medtronic Defendants supplied/supply these components with knowledge of the '738 patent and knowledge that the components were/are especially made for use in an infringing manner.

123.    On information and belief, the Medtronic Defendants have also indirectly infringed and continue to indirectly infringe the '738 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '738 Accused Instrumentalities (such as intervertebral cages and/or screw locking brackets) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '738 patent if such combination occurred within the United States. For example, the Medtronic Defendants have supplied, and continue to supply, such third parties outside of the United States with one or more components of the '738 Accused Instrumentalities with full knowledge of the '738 patent.  These third parties have made or used the '738 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '738 Accused Instrumentalities and use them in ways that would infringe the '738 patent if such combination occurred within the United States.  The Medtronic Defendants

provide these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '738 patent if such assembly and usage took place in the United States. Additionally, the Medtronic Defendants' components are especially made and/or especially adapted for use in an infringing manner and the Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

124.    On information and belief, the Medtronic Defendants' actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '738 patent. At a minimum, the Medtronic Defendants' conduct demonstrates that the Medtronic Defendants either knew or should have known that the acts of such third parties directly infringed/infringe the '738 patent (or would infringe if those acts occurred within the United States).

125.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '738 patent has been and continues to be willful and merits enhanced damages.

126.    For example, the Medtronic Defendants have known of the '738 patent and their infringement of the '738 patent as described herein.

127.    On information and belief, since knowing of the '738 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '738 patent.

128.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '738 patent.

129.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '738 patent are either invalid or not infringed by the '738 Accused Instrumentalities and/or their activities concerning the '738 Accused Instrumentalities.

130.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

131.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '738 patent unless and until they are enjoined by this Court.

132.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '738 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '738 patent.

## COUNT V
### (Infringement of the '505 Patent)

133.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

134.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '505 patent under 35

U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '505 Accused Instrumentalities. Medtronic's '505 Accused Instrumentalities include, but are not limited to, the Divergence systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

135.    Attached to this Complaint as Exhibit E2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '505 patent are met by the '505 Accused Instrumentalities.

136.    The Medtronic Defendants' infringement of the '505 patent has also been indirect.

137.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '505 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '505 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '505 patent.

138.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials,

promotional materials, and the like that instructed/instructs them how to make and/or use the '505 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claim 1 of the '505 patent, or with willful blindness to that fact.  On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '505 Accused Instrumentalities in ways that directly infringe the '505 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '505 patent.  Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '505 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '505 patent.  Alternatively, the Medtronic Defendants have acted with willful blindness to these facts.  On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '505 Accused Instrumentalities constitutes direct infringement of the '505 patent but took deliberate actions to avoid learning of these facts.

139.    On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '505 patent since at least shortly after the issuance of the '505 patent in March 2019, or were willfully blind to the existence of the patent.

140.    For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

141.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to Medtronic explicitly identified more than thirty issued patents and pending applications within Moskowitz Family LLC's portfolio.  The asserted '505 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

142.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '505 Accused Instrumentalities constitutes an act of direct infringement of the '505 patent since at least shortly after the issuance of the '505 patent in March 2019.  The Medtronic Defendants received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such

lack of knowledge resulted from their deliberate decision to avoid learning these facts.
The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the
making and/or using of the '505 Accused Instrumentalities by hospitals, surgeons,
medical professionals, distributors, manufacturers, and independent sales representatives
directly infringes the '505 patent.

143.    On information and belief, the Medtronic Defendants have indirectly
infringed and continue to indirectly infringe the '505 patent under 35 U.S.C. § 271(c)
because they have contributed to direct infringement, and continue to contribute to direct
infringement, by third parties (including hospitals, surgeons, medical professionals,
distributors, manufacturers, and independent sales representatives) of at least claim 1 of
the '505 patent.  For example, the Medtronic Defendants have sold, offered for sale,
and/or imported into the United States and are currently selling, offering for sale, and/or
importing into the United States components of the '505 Accused Instrumentalities (such
as intervertebral spacers and/or screw locking mechanisms) to these third parties with full
knowledge of the '505 patent.  These third parties have assembled the components to
make and use the '505 Accused Instrumentalities according to instructions, manuals,
brochures, documentation, tutorials, videos, mobile applications, website materials,
promotional materials, and the like that instructed/instruct them how to assemble and use
the components of the '505 Accused Instrumentalities in ways that infringed/infringe the
'505 patent.  The Medtronic Defendants' components were and are not staple articles or
commodities of commerce suitable for substantial noninfringing uses.  Further, the
Medtronic Defendants' components constituted/constitute a material part of the

inventions claimed in the '505 patent. The Medtronic Defendants supplied/supply these components with knowledge of the '505 patent and knowledge that the components were/are especially made for use in an infringing manner.

144.    On information and belief, the Medtronic Defendants have also indirectly infringed and continue to indirectly infringe the '505 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '505 Accused Instrumentalities (such as intervertebral spacers and/or screw locking mechanisms) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '505 patent if such combination occurred within the United States. For example, the Medtronic Defendants have supplied, and continues to supply, such third parties outside of the United States with one or more components of the '505 Accused Instrumentalities with full knowledge of the '505 patent. These third parties have made or used the '505 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '505 Accused Instrumentalities and use them in ways that would infringe the '505 patent if such combination occurred within the United States. The Medtronic Defendants provide these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '505 patent if such assembly and usage took place in the United States. Additionally, the

Medtronic Defendants' components are especially made and/or especially adapted for use in an infringing manner and the Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

145.    On information and belief, the Medtronic Defendants' actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '505 patent.  At a minimum, the Medtronic Defendants' conduct demonstrates that the Medtronic Defendants either knew or should have known that the acts of such third parties directly infringed/infringe the '505 patent (or would infringe if those acts occurred within the United States).

146.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '505 patent has been and continues to be willful and merits enhanced damages.

147.    For example, the Medtronic Defendants have known of the '505 patent and their infringement of the '505 patent as described herein.

148.    On information and belief, since knowing of the '505 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '505 patent.

149.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '505 patent.

150.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '505 patent are either invalid or not infringed by the '505 Accused Instrumentalities and/or their activities concerning the '505 Accused Instrumentalities.

151.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

152.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '505 patent unless and until they are enjoined by this Court.

153.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '505 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '505 patent.

## <u>COUNT VI</u>
### (Infringement of the '633 Patent)

154.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

155.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '633 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using,

selling, offering for sale, and/or importing the '633 Accused Instrumentalities. Medtronic's '633 Accused Instrumentalities include, but are not limited to, the Elevate and Catalyft systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

156. Attached to this Complaint as Exhibits F2 and F3 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 1 of the '633 patent are met by the '633 Accused Instrumentalities.

157. The Medtronic Defendants' infringement of the '633 patent has also been indirect.

158. On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '633 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '633 Accused Instrumentalities. Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '633 patent.

159. For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '633 Accused Instrumentalities, with knowledge that making and/or usage in

accordance with their instructions directly infringed/infringes at least claim 1 of the '633 patent, or with willful blindness to that fact. On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '633 Accused Instrumentalities in ways that directly infringe the '633 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '633 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '633 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '633 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '633 Accused Instrumentalities constitutes direct infringement of the '633 patent but took deliberate actions to avoid learning of these facts.

160. On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '633 patent since at least shortly after the issuance of the '633 patent in October 2019, or were willfully blind to the existence of the patent.

161. For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when

Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

162.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to the Medtronic Defendants explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio.  The asserted '633 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

163.    On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '633 patent.  For example, the '633 patent has been cited during prosecution of at least 15 of the Medtronic Defendants' patent applications—starting as early as May 2021.

164.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '633 Accused Instrumentalities constitutes an act of direct

infringement of the '633 patent since at least shortly after the issuance of the '633 patent in October 2019.  The Medtronic Defendants were further aware of their infringement as of at least May 2021, when they first cited the '633 patent during prosecution of their own patent applications, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts.  The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '633 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '633 patent.

165.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '633 patent has been and continues to be willful and merits enhanced damages.

166.    For example, the Medtronic Defendants have known of the '633 patent and their infringement of the '633 patent as described herein.

167.    On information and belief, since knowing of the '633 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '633 patent.

168.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '633 patent.

169.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '633 patent are either invalid or not infringed by the '633 Accused Instrumentalities and/or their activities concerning the '633 Accused Instrumentalities.

170.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

171.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '633 patent unless and until they are enjoined by this Court.

172.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '633 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '633 patent.

## COUNT VII

### (Infringement of the '183 Patent)

173.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

174.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '183 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using,

selling, offering for sale, and/or importing the '183 Accused Instrumentalities. Medtronic's '183 Accused Instrumentalities include, but are not limited to, the Sovereign systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

175.    Attached to this Complaint as Exhibit G2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '183 patent are met by the '183 Accused Instrumentalities.

176.    The Medtronic Defendants' infringement of the '183 patent has also been indirect.

177.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '183 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '183 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '183 patent.

178.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '183 Accused Instrumentalities, with knowledge that making and/or usage in

accordance with their instructions directly infringed/infringes at least claim 1 of the '183 patent, or with willful blindness to that fact. On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '183 Accused Instrumentalities in ways that directly infringe the '183 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '183 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '183 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '183 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '183 Accused Instrumentalities constitutes direct infringement of the '183 patent but took deliberate actions to avoid learning of these facts.

179.    On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '183 patent since at least shortly after the issuance of the '183 patent in March 2020, or were willfully blind to the existence of the patent.

180.    For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when

Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

181.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which Medtronic sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to Medtronic explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio.  The asserted '183 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

182.    On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '183 patent.  For example, family members of the '183 patent have been cited during prosecution of at least 18 of the Medtronic Defendants' patent applications—starting as early as May 2021.

183.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '183 Accused Instrumentalities constitutes an act of direct infringement of the '183 patent since at least shortly after the issuance of the '183 patent

in March 2020.  The Medtronic Defendants were further aware of their infringement as of at least May 2021, when they first cited family members of the '183 patent during prosecution of their own patent applications, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts. The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '183 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '183 patent.

184.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe the '183 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 1 of the '183 patent.  For example, the Medtronic Defendants have sold, offered for sale, and/or imported into the United States and are currently selling, offering for sale, and/or importing into the United States components of the '183 Accused Instrumentalities (such as intervertebral cages and/or screw locking brackets) to these third parties with full knowledge of the '183 patent.  These third parties have assembled the components to make and use the '183 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials,

promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '183 Accused Instrumentalities in ways that infringed/infringe the '183 patent. The Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, the Medtronic Defendants' components constituted/constitute a material part of the inventions claimed in the '183 patent. The Medtronic Defendants have supplied/supply these components with knowledge of the '183 patent and knowledge that the components were/are especially made for use in an infringing manner.

185.    On information and belief, the Medtronic Defendants have also indirectly infringed and continue to indirectly infringe the '183 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '183 Accused Instrumentalities (such as intervertebral cages and/or screw locking brackets) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '183 patent if such combination occurred within the United States. For example, the Medtronic Defendants have supplied, and continue to supply, such third parties outside of the United States with one or more components of the '183 Accused Instrumentalities with full knowledge of the '183 patent. These third parties have made or used the '183 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of

the '183 Accused Instrumentalities and use them in ways that would infringe the '183

patent if such combination occurred within the United States.  The Medtronic Defendants

provide these instructions to the third parties with the knowledge that assembly and usage

in accordance with their instructions would infringe the '183 patent if such assembly and

usage took place in the United States.  Additionally, the Medtronic Defendants'

components are especially made and/or especially adapted for use in an infringing

manner and the Medtronic Defendants' components were and are not staple articles or

commodities of commerce suitable for substantial noninfringing uses.

186.    On information and belief, the Medtronic Defendants' actions demonstrate

an intent not only to cause the acts described herein that form the basis of direct

infringement by third parties (or would form the basis of direct infringement if they

occurred within the United States), but also to cause these acts with the specific intent to

infringe the '183 patent.  At a minimum, the Medtronic Defendants' conduct

demonstrates that the Medtronic Defendants either knew or should have known that the

acts of such third parties directly infringed/infringe the '183 patent (or would infringe if

those acts occurred within the United States).

187.    Moreover, on information and belief, the Medtronic Defendants'

infringement of the '183 patent has been and continues to be willful and merits enhanced

damages.

188.    For example, the Medtronic Defendants have known of the '183 patent and

their infringement of the '183 patent as described herein.

189.    On information and belief, since knowing of the '183 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '183 patent.

190.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '183 patent.

191.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '183 patent are either invalid or not infringed by the '183 Accused Instrumentalities and/or their activities concerning the '183 Accused Instrumentalities.

192.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

193.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '183 patent unless and until they are enjoined by this Court.

194.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '183 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '183 patent.

## COUNT VIII

### (Infringement of the '797 Patent)

195.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

196.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '797 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '797 Accused Instrumentalities. Medtronic's '797 Accused Instrumentalities include, but are not limited to, the Elevate and Catalyft systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

197.    Attached to this Complaint as Exhibits H2 and H3 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 16 of the '797 patent are met by the '797 Accused Instrumentalities.

198.    The Medtronic Defendants' infringement of the '797 patent has also been indirect.

199.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '797 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '797

Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '797 patent.

200.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '797 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claim 16 of the '797 patent, or with willful blindness to that fact.  On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '797 Accused Instrumentalities in ways that directly infringe the '797 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '797 patent.  Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '797 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '797 patent.  Alternatively, the Medtronic Defendants have acted with willful blindness to these facts.  On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or

use of Medtronic's '797 Accused Instrumentalities constitutes direct infringement of the

'797 patent but took deliberate actions to avoid learning of these facts.

201.    On information and belief, the Medtronic Defendants have been aware of

the inventions described and claimed in the '797 patent since at least shortly after the

issuance of the '797 patent in August 2021, or were willfully blind to the existence of the

patent.

202.    For example, the Medtronic Defendants have been aware of Moskowitz

Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when

Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in

discussions about them.

203.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent

portfolio was further reinforced between 2010 and 2014 through their active engagement

with Dr. Moskowitz, during which the Medtronic Defendants sought and received

technical presentations, reviewed patent claims, requested additional technical details,

and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of

meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally

placed the Medtronic Defendants on notice of his patent rights through written

correspondence from legal counsel.  The letters sent to the Medtronic Defendants

explicitly identified more than thirty issued patents and pending applications within

Dr. Moskowitz's portfolio.  The asserted '797 patent is a continuation of the patents and

pending applications referenced in the letters—and shares the same technical description

and figures as those patents and pending applications disclosed to the Medtronic Defendants.

204.    On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '797 patent.  For example, the '797 patent has been cited during prosecution of at least 11 of the Medtronic Defendants' patent applications—starting as early as November 2021.

205.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '797 Accused Instrumentalities constitutes an act of direct infringement of the '797 patent since at least shortly after the issuance of the '797 patent in August 2021.  The Medtronic Defendants were further aware of their infringement as of at least November 2021, when they first cited the '797 patent during prosecution of their own patent applications, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts.  The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '797 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '797 patent.

206.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe the '797 patent under 35 U.S.C. § 271(c)

because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 16 of the '797 patent. For example, the Medtronic Defendants have sold, offered for sale, and/or imported into the United States and are currently selling, offering for sale, and/or importing into the United States components of the '797 Accused Instrumentalities (such as expandable intervertebral fusion devices and/or various inserter tools) to these third parties with full knowledge of the '797 patent. These third parties have assembled the components to make and use the '797 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '797 Accused Instrumentalities in ways that infringed/infringe the '797 patent. The Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, the Medtronic Defendants' components constituted/constitute a material part of the inventions claimed in the '797 patent. The Medtronic Defendants supplied/supply these components with knowledge of the '797 patent and knowledge that the components were/are especially made for use in an infringing manner.

207. On information and belief, the Medtronic Defendants have also indirectly infringed and continue to indirectly infringe the '797 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '797 Accused Instrumentalities (such as expandable intervertebral fusion devices and/or various inserter

tools) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 16 of the '797 patent if such combination occurred within the United States. For example, the Medtronic Defendants have supplied, and continue to supply, such third parties outside of the United States with one or more components of the '797 Accused Instrumentalities with full knowledge of the '797 patent. These third parties have made or used the '797 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '797 Accused Instrumentalities and use them in ways that would infringe the '797 patent if such combination occurred within the United States. The Medtronic Defendants provide these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '797 patent if such assembly and usage took place in the United States. Additionally, the Medtronic Defendants' components are especially made and/or especially adapted for use in an infringing manner and the Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

208. On information and belief, the Medtronic Defendants' actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to

infringe the '797 patent.  At a minimum, the Medtronic Defendants' conduct demonstrates that the Medtronic Defendants either knew or should have known that the acts of such third parties directly infringed/infringe the '797 patent (or would infringe if those acts occurred within the United States).

209.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '797 patent has been and continues to be willful and merits enhanced damages.

210.    For example, the Medtronic Defendants have known of the '797 patent and their infringement of the '797 patent as described herein.

211.    On information and belief, since knowing of the '797 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '797 patent.

212.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '797 patent.

213.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '797 patent are either invalid or not infringed by the '797 Accused Instrumentalities and/or their activities concerning the '797 Accused Instrumentalities.

214.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

215.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '797 patent unless and until it is enjoined by this Court.

216.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '797 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '797 patent.

## COUNT IX

### (Infringement of the '136 Patent)

217.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

218.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '136 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '136 Accused Instrumentalities. Medtronic's '136 Accused Instrumentalities include, but are not limited to, the Elevate and Catalyft systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

219.    Attached to this Complaint as Exhibits I2 and I3 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claim 1 of the '136 patent are met by the '136 Accused Instrumentalities.

220.    The Medtronic Defendants' infringement of the '136 patent has also been indirect.

221.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '136 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '136 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '136 patent.

222.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '136 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claim 1 of the '136 patent, or with willful blindness to that fact.  On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '136 Accused Instrumentalities in ways that directly

infringe the '136 patent, and Medtronic has and will continue to encourage these acts with the specific intent to infringe the '136 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '136 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '136 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '136 Accused Instrumentalities constitutes direct infringement of the '136 patent but took deliberate actions to avoid learning of these facts.

223.    On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '136 patent since at least shortly after the issuance of the '136 patent in July 2022, or were willfully blind to the existence of the patent.

224.    For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

225.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement

with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP." By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel. The letters sent to the Medtronic Defendants explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio. The asserted '136 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

226.   On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '136 patent. For example, family members of the '136 patent have been cited during prosecution of at least 3 of the Medtronic Defendants' patent applications—starting as early as October 2024.

227.   On information and belief, the Medtronic Defendants have known that the making and/or using of their '136 Accused Instrumentalities constitute an act of direct infringement of the '136 patent since at least shortly after the issuance of the '136 patent in July 2022. The Medtronic Defendants were further aware of their infringement as of at least October 2024, when they first cited the family members of the '136 patent during prosecution of their own patents, and received additional notice through the filing and

service of this Complaint, as demonstrated by the attached claim charts. To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts. The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '136 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '136 patent.

228. On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe the '136 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) of at least claim 1 of the '136 patent. For example, the Medtronic Defendants have sold, offered for sale, and/or imported into the United States and are currently selling, offering for sale, and/or importing into the United States components of the '136 Accused Instrumentalities (such as inserter tools/drive shafts and/or expandable spinal implants) to these third parties with full knowledge of the '136 patent. These third parties have assembled the components to make and use the '136 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to assemble and use the components of the '136 Accused Instrumentalities in ways that infringed/infringe the '136 patent. The Medtronic Defendants' components were and are not staple articles or

commodities of commerce suitable for substantial noninfringing uses.  Further, the Medtronic Defendants' components constituted/constitute a material part of the inventions claimed in the '136 patent.  The Medtronic Defendants supplied/supply these components with knowledge of the '136 patent and knowledge that the components were/are especially made for use in an infringing manner.

229.    On information and belief, the Medtronic Defendants have also indirectly infringed and continue to indirectly infringe the '136 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '136 Accused Instrumentalities (such as inserter tools/drive shafts and/or expandable spinal implants) to third parties (including foreign subsidiaries, hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) and intending that these third parties combine the components in a manner that would directly infringe at least claim 1 of the '136 patent if such combination occurred within the United States. For example, the Medtronic Defendants have supplied, and continue to supply, such third parties outside of the United States with one or more components of the '136 Accused Instrumentalities with full knowledge of the '136 patent.  These third parties have made or used the '136 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instruct them how to combine the components of the '136 Accused Instrumentalities and use them in ways that would infringe the '136 patent if such combination occurred within the United States.  The Medtronic Defendants provide these instructions to the third parties with the knowledge that assembly and usage

in accordance with their instructions would infringe the '136 patent if such assembly and usage took place in the United States. Additionally, the Medtronic Defendants' components are especially made and/or especially adapted for use in an infringing manner and the Medtronic Defendants' components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

230.    On information and belief, the Medtronic Defendants' actions demonstrate an intent not only to cause the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also to cause these acts with the specific intent to infringe the '136 patent. At a minimum, the Medtronic Defendants' conduct demonstrates that the Medtronic Defendants either knew or should have known that the acts of such third parties directly infringed/infringe the '136 patent (or would infringe if those acts occurred within the United States).

231.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '136 patent has been and continues to be willful and merits enhanced damages.

232.    For example, the Medtronic Defendants have known of the '136 patent and their infringement of the '136 patent as described herein.

233.    On information and belief, since knowing of the '136 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '136 patent.

234.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '136 patent.

235.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '136 patent are either invalid or not infringed by the '136 Accused Instrumentalities and/or their activities concerning the '136 Accused Instrumentalities.

236.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

237.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '136 patent unless and until they are enjoined by this Court.

238.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '136 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '136 patent.

## COUNT X
### (Infringement of the '755 Patent)

239.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

240.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '293 patent under 35

U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '755 Accused Instrumentalities. Medtronic's '755 Accused Instrumentalities include, but are not limited to, the T2 Stratosphere systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

241.    Attached to this Complaint as Exhibit J2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '755 patent are met by the '755 Accused Instrumentalities.

242.    The Medtronic Defendants' infringement of the '755 patent has also been indirect.

243.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '755 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '755 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '755 patent.

244.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials,

promotional materials, and the like that instructed/instructs them how to make and/or use the '755 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claim 1 of the '755 patent, or with willful blindness to that fact. On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '755 Accused Instrumentalities in ways that directly infringe the '755 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '755 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '755 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '755 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '755 Accused Instrumentalities constitutes direct infringement of the '755 patent but took deliberate actions to avoid learning of these facts.

245.    On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '755 patent since at least shortly after the issuance of the '755 patent in January 2024, or were willfully blind to the existence of the patent.

246.    For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

247.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to the Medtronic Defendants explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio.  The asserted '755 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

248.    On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '755 patent.  For example, family members of the '755 patent have been cited during prosecution of at least 3 of the Medtronic Defendants' patent applications—starting as early as October 2024.

249.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '755 Accused Instrumentalities constitutes an act of direct infringement of the '755 patent since at least shortly after the issuance of the '755 patent in January 2024.  The Medtronic Defendants were further aware of their infringement as of at least October 2024, when they first cited family members of the '755 patent during prosecution of their own patent applications, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts. The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '755 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '755 patent.

250.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '755 patent has been and continues to be willful and merits enhanced damages.

251.    For example, the Medtronic Defendants have known of the '755 patent and their infringement of the '755 patent as described herein.

252.    On information and belief, since knowing of the '755 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '755 patent.

253.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '755 patent.

254.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '755 patent are either invalid or not infringed by the '755 Accused Instrumentalities and/or their activities concerning the '755 Accused Instrumentalities.

255.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

256.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '755 patent unless and until they are enjoined by this Court.

257.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '755 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '755 patent.

## COUNT XI
### (Infringement of the '367 Patent)

258.    Moskowitz Family LLC restates and realleges all the foregoing paragraphs as if fully stated herein.

259.    On information and belief, the Medtronic Defendants have directly infringed and continue to directly infringe one or more claims of the '367 patent under 35

U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing the '367 Accused Instrumentalities. Medtronic's '367 Accused Instrumentalities include, but are not limited to, the Elevate and Catalyft systems and instrumentation, and any other Medtronic product, either alone or in combination, that operates in a reasonably similar manner.

260.    Attached to this Complaint as Exhibits K2 and K3 are representative charts that, on information and belief, describe how, as a non-limiting example, the elements of exemplary claims 8 or 17 of the '367 patent are met by the '367 Accused Instrumentalities.

261.    The Medtronic Defendants' infringement of the '367 patent has also been indirect.

262.    On information and belief, the Medtronic Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '367 patent under 35 U.S.C. § 271(b) because they have induced and continue to induce, third parties (including hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives) to make, use, sell, offer to sell, and/or import the '367 Accused Instrumentalities.  Such making, using, selling, offering for sale, and/or importing by third parties constitutes direct infringement of one or more claims of the '367 patent.

263.    For example, the Medtronic Defendants have supplied, and continue to supply, such induced third parties with spinal surgery products, instructions, manuals,

brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials, and the like that instructed/instructs them how to make and/or use the '367 Accused Instrumentalities, with knowledge that making and/or usage in accordance with their instructions directly infringed/infringes at least claims 8 or 17 of the '367 patent, or with willful blindness to that fact. On information and belief, the Medtronic Defendants will continue to encourage, aid, or otherwise cause these third parties to, for example, make and/or use their '367 Accused Instrumentalities in ways that directly infringe the '367 patent, and the Medtronic Defendants have and will continue to encourage these acts with the specific intent to infringe the '367 patent. Further, the Medtronic Defendants provide information and technical support to hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials, encouraging them to make, purchase, and use Medtronic's '367 Accused Instrumentalities with knowledge that such making and/or use constitutes an act of direct infringement of the '367 patent. Alternatively, the Medtronic Defendants have acted with willful blindness to these facts. On information and belief, the Medtronic Defendants know that there is a high probability that the making and/or use of Medtronic's '367 Accused Instrumentalities constitutes direct infringement of the '367 patent but took deliberate actions to avoid learning of these facts.

264. On information and belief, the Medtronic Defendants have been aware of the inventions described and claimed in the '367 patent since at least shortly after the

issuance of the '367 patent in June 2024, or were willfully blind to the existence of the patent.

265.    For example, the Medtronic Defendants have been aware of Moskowitz Family LLC's spinal fusion innovations and patent portfolio since at least 2005 when Dr. Moskowitz and Medtronic's Vice President of Product Development engaged in discussions about them.

266.    The Medtronic Defendants' awareness of Moskowitz Family LLC's patent portfolio was further reinforced between 2010 and 2014 through their active engagement with Dr. Moskowitz, during which the Medtronic Defendants sought and received technical presentations, reviewed patent claims, requested additional technical details, and expressed interest in Dr. Moskowitz's "published IP."  By 2015, after years of meetings, product demonstrations, and detailed disclosures, Dr. Moskowitz formally placed the Medtronic Defendants on notice of his patent rights through written correspondence from legal counsel.  The letters sent to the Medtronic Defendants explicitly identified more than thirty issued patents and pending applications within Dr. Moskowitz's portfolio.  The asserted '367 patent is a continuation of the patents and pending applications referenced in the letters—and shares the same technical description and figures as those patents and pending applications disclosed to the Medtronic Defendants.

267.    On information and belief, the Medtronic Defendants' patent prosecution activities further confirm that they have been aware of Moskowitz Family LLC's patent portfolio and the inventions described and claimed in the '367 patent.  For example,

family members of the '367 patent have been cited during prosecution of at least 4 of the Medtronic Defendants' patent applications—starting as early as October 2024.

268.    On information and belief, the Medtronic Defendants have known that the making and/or using of their '367 Accused Instrumentalities constitute an act of direct infringement of the '367 patent since at least shortly after the issuance of the '367 patent in June 2024.  The Medtronic Defendants were further aware of their infringement as of at least October 2024, when they first cited family members of the '367 patent during prosecution of their own patents, and received additional notice through the filing and service of this Complaint, as demonstrated by the attached claim charts.  To the extent the Medtronic Defendants lacked actual knowledge of their infringement, such lack of knowledge resulted from their deliberate decision to avoid learning these facts.  The Medtronic Defendants, therefore, knew or were willfully blind to the fact that the making and/or using of the '367 Accused Instrumentalities by hospitals, surgeons, medical professionals, distributors, manufacturers, and independent sales representatives directly infringes the '367 patent.

269.    Moreover, on information and belief, the Medtronic Defendants' infringement of the '367 patent has been and continues to be willful and merits enhanced damages.

270.    For example, the Medtronic Defendants have known of the '367 patent and their infringement of the '367 patent as described herein.

271.    On information and belief, since knowing of the '367 patent and their infringement thereof, the Medtronic Defendants have not taken any affirmative steps to avoid infringing the '367 patent.

272.    On information and belief, the Medtronic Defendants have made no attempt to design around the claims of the '367 patent.

273.    On information and belief, the Medtronic Defendants have no reasonable basis for believing that the claims of the '367 patent are either invalid or not infringed by the '367 Accused Instrumentalities and/or their activities concerning the '367 Accused Instrumentalities.

274.    Moskowitz Family LLC has been damaged as the result of the Medtronic Defendants' willful infringement.

275.    On information and belief, the Medtronic Defendants will continue to infringe one or more claims of the '367 patent unless and until they are enjoined by this Court.

276.    On information and belief, the Medtronic Defendants have caused and will continue to cause Moskowitz Family LLC irreparable injury and damage by infringing the '367 patent.  Moskowitz Family LLC will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until the Medtronic Defendants are enjoined from infringing the claims of the '367 patent.

## **JURY DEMAND**

277.    Moskowitz Family LLC requests a jury trial as to all issues that are triable by a jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Moskowitz Family LLC respectfully requests that this Court:

A.    Enter judgment that the Medtronic Defendants have each infringed one or more of the claims of each of the Asserted Patents;

B.    Enter an order permanently enjoining the Medtronic Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the Asserted Patents;

C.    Award Moskowitz Family LLC all appropriate damages for the infringement of the Asserted Patents, including pre-judgment and post-judgment interest, costs, and all other relief permitted under 35 U.S.C. § 284;

D.    Award Moskowitz Family LLC an accounting for acts of infringement not presented at trial, including an award of additional damages for such acts of infringement;

E.    Enter judgment that the Medtronic Defendants' infringement of each of the Asserted Patents has been deliberate and willful;

F.    Treble the damages awarded to Moskowitz Family LLC under 35 U.S.C. § 284 by reason of the Medtronic Defendants' willful infringement of one or more claims of each of the Asserted Patents;

G.    Declare this case to be "exceptional" under 35 U.S.C. § 285 and award Moskowitz Family LLC its attorneys' fees, expenses, and costs incurred in this action; and

H.    Award Moskowitz Family LLC such other and further relief at law or in equity as the Court deems just and proper.

DATED: February 28, 2025

**AVANTECH LAW LLP**

By:  */s/ Jason M. Zucchi*

Jason M. Zucchi (Bar No. 0387908)
William R. Woodford (Bar No.0322593)
Todd S. Werner (Bar No.033019X)
Shelleaha L. Jonas (Bar No. 0398417)
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Phone: (612) 895-2721
zucchi@avantechlaw.com
woodford@avantechlaw.com
werner@avantechlaw.com
jonas@avantechlaw.com

Julianne Thomsen (*pro hac vice* forthcoming)
521 5th Avenue, 17th Floor
New York, NY 10175-0038
Phone: (646) 516-5248
Fax: (612) 464-2001
thomsen@avantechlaw.com

Sabrina Wilson (*pro hac vice* forthcoming)
730 Peachtree Street NE, Suite 570
Atlanta, GA 30308
Telephone: 404.282.5283
wilson@avantechlaw.com

***Attorneys for Plaintiff***
***Moskowitz Family LLC***